Case number 19-1590-191706, United States of America v. Walter G. Boulding. Argument not to exceed 15 minutes per side. Ms. Anna Rappe, you may proceed for the appellant. Thank you. May it please the court, Anna Rappe for Mr. Boulding. We are asking the court today for a finding that Mr. Boulding is eligible for First Step Act relief because the penalty range of the federal criminal statute that he violated was changed by the First Step Act and he was sentenced before 2010 and has not yet received a reduction. We believe that his case falls directly within the language of the statute and every circuit court that has decided on the our position or our reading of his eligibility. Because the grammatical rule of the nearest antecedent, which says that the penalty clause modifies federal criminal statute or even if it modifies the entire phrase, violation of a federal criminal statute. We believe that his violation of a federal criminal statute had the penalty range changed as a result of the First Step Act. Also, the word violation can't properly be divorced from the restrictive clause of a criminal statute. Violation has no meaning by itself. It only means... We spent a lot of time on that analysis. You all both have been very helpful in getting other Circuit Courts of Appeals decisions to us. Now my count, we're now at six Courts of Appeals that have taken it up, all of which have agreed with Ms. Rappap... Rappas? Rappay. Thank you. Analysis. I am frankly more interested in what processes do. I don't want to cut off your argument, but if you could turn fairly quickly or soon to speaking about what process is due in this circumstance, I'd appreciate it. Thank you, Your Honor. And I think, honestly, we're in a much better position today to understand the Sixth Circuit's position on the process that's due after the two cases that came out this week, and I'm forgetting the name of the other one. Forman. Thank you. So Smith and Forman, I feel like sort of bookend this question for the Court. Smith was a slightly different factual situation where that defendant was asking for a reopening of all sentencing questions regarding even counts that were not affected by the Fair Sentencing Act. So I think it was very fair for the Sixth Circuit in that case to say he is asking for a plenary resentencing and that is not allowed. I think that all the Circuit Courts that have addressed that have also agreed plenary sentencing is not required. I should say it's not required by the First Step Act. And when we compare what the First Step Act allows or demands with the idea of a plenary resentencing, it makes sense to use an analogy to 3582C2. But in Forman, I think this Court clarified further that kind of procedural question then of what process is required by saying, you know what, this is a broader grant of authority than 3582C2 or 35B. And let's not rush to make those equal because they're not. Because 3582's restrictions to a guideline sentence that complies with the policy statements of the federal sentencing guidelines does not apply to 3582C1 or other statutory grants of authority to reconsider or to impose a reduced sentence. And quite honestly, there isn't anything that is 100% analogous or equal to this First Step Act grant of authority to reduce the sentence. So we're using analogies. So I think it's fair to say, as compared to plenary resentencing, your authority to consider what should have happened below or the District Court authority is less than a plenary resentencing. And it's closer to what's real in the 3582C2 situation. But then when you turn to compare the First Step Act to 3582, we cannot say they're the same thing. They're not the same thing. And so in Forman, this Court said... Well, Counsel, what role does Section 404C of the FSA play when it's referencing a complete review of the motion on the merits? Does that play into your analysis? I think that that's an important consideration because it... I mean, what does complete mean then? And I think that's the question the Court has. The Court is saying, what is a complete review? For Mr. Boulding, a complete review allows the District Court and truly, I think, requires the District Court to consider his sentencing objections that he raised, that his counsel said were frivolous, that his counsel specifically told the Court not to consider, that the Court did not decide at sentencing. If you look at the language in the Court's sentencing transcript, in his spoken opinion, he says, if I was asked to decide, this is what you would associate with dicta. It wasn't in front of him at the time. So I know he's given us a heads up about where he thinks he would go, but that matter wasn't briefed by counsel. It was raised by the defendant over... basically over the objection of counsel and was put on the record in order to preserve his rights in whatever way he could in that situation. So because the First Step Act requires the Court to sentence or reconsider the sentence or impose a reduced sentence as if the Fair Sentencing Act was in place, I think that a complete review of that question requires an accurate scoring of the guidelines. And at the time Mr. Boulding's imposed, the guidelines were equal to the mandatory life sentence that he was going to get because of the statute. Now that that mandatory life sentence is removed, the rest of the guidelines scoring of all of those things that he objected to suddenly become relevant again. And because Mr. Boulding is entitled to sentencing based on accurately scored guidelines, this seems to me to rise to the level of a due process kind of question. He needs that process in order to actually follow what the First Step Act requires, which is that complete review of his motion. And I will say as well that Mr. Boulding requested the opportunity to address these specifically. And I'd like the Court to understand the context of the conversation that we were having. This Boulding case was, if not the first, like the second case that the Western District of Michigan decided. And Judge Yonker's order was an invitation to discuss the process that he should use. And I was in the position as counsel below of trying to determine it seemed impossible with the limited communication ability that I had with my client, with the limited access to the record information and or all of the discovery that the first attorney would have had. It did not seem possible to make those I requested additional time to speak with the client and to raise those issues before the court decided the First Step Act question. The court declined by simply issuing an opinion. And whether that was because there wasn't anything out there and we were trying to get things moving, I don't know. But knowing the judge and the court, I took that to mean, we've, you know, I've thought about that. We're not going to do that. You're not going to have the opportunity to evaluate. So that I interpreted as a no. No, you're not going to have that opportunity to evaluate it. That's the context that we're living in, in the practical sense. So what would you propose that process look like now that you have Foreman and you have Kenta Smith? And I guess your Bemis somewhat comes into that. But what do you envision that methodology to be? So I think Foreman leaves that open and asks the district courts to use their discretion in evaluating the actual facts of the case on the ground to determine what kind of process is necessary. The court has already said, you know what, that process is going to look different from factual scenario to factual scenario, which is why I just keep coming back to this factual scenario where Mr. Boulding raised the arguments. They were never decided. We raised them again. This seems very much to fit squarely within Foreman's use of discretion and or we've given the court then an opportunity to say, you know what, that was an essential to evaluate. You cannot make a decision about what the guidelines would have been, what your decision would have been at the time the Fair Sentencing Act was in existence without doing this. I don't think it's possible. So would this be driven by the motion for resentencing itself? You mean the First Step Act motion? Yeah, the First Step Act motion to have a resentencing. Would your understanding be that the request or the time or the presentation of the issues would all be in that document? I see my time has expired. If it's okay that I answer. Thank you. I do think that the court could rely on the parties to identify the issues that were important to evaluate in that case. So I red flagged this issue. We have these sentencing issues. That is an appropriate then use of discretion to say in this case because it's relevant, we'll evaluate those things. Any further questions? No. No. All right. All right. Ms. Schechmer, am I pronouncing? I'm terrible at names. I'm sorry. Oh, we can't hear you. Thank you. I'm unmuted now. Yes, right. Thank you. Thank you. Thank you, Renee Schechmer on behalf of the government. And we have a cross appeal. So I'm going to start with our issue first and then move to the due process issue, which is raised by defense. The government is sentenced. The court is well aware. There's been a number of circuits that have come down on this issue. And the court is correct. These circuits have been siding with the defense. In fact, some with the district court in this case, where they're coming to a categorical analysis, which basically is if you were sentenced under 841 B1A or B1B, you automatically qualify as a covered offense. The government continues to believe that this is a wrong analysis. And so I want to tell the court why I would like to put it on the record. Section 404A states that the term covered offense means a violation of a federal criminal statute, the statutory penalties for which were modified by Section 2 or 3 of the Fair Sentencing Act of 2010 that was committed before August 3rd, 2010. In the cases cited by the defense and I think referred to by the court, primarily Shaw, Smith and Worthing out of the 7th, 1st and 4th circuits, based their approach on canons of statutory construction, specifically the last antecedent rule or the nearest reasonable reference canon. But these canons of statutory construction, while applicable, are not controlling, particularly when they are used to ignore basic English grammar. The grammar canon clearly establishes that words are to be given the meaning that proper grammar and usage would assign them. A violation of a federal criminal statute is a noun phrase. The noun phrase is a phrase which includes both a noun and optional modifiers. Violation is the noun of a federal criminal statute is the optional modifier. The purpose in pointing this out is an optional modifier can be removed from the sentence without changing the meaning of the sentence. Does it not strike you that when you add the other three, the 5th circuit, the 8th circuit and the 3rd circuit's analysis, which all say the same thing, that they are also looking at normative grammar purposes and expression and deciding this against you? I understand that that is what they are doing. The government disagrees with their interpretation of this. I would like to put this on the record for purposes of further review. If the government decides to take that course. I realize I'm pushing a boulder uphill here, Your Honor. You are free to rest on your briefing, which explains thoroughly your issue. At some point in this argument, we want to get to the process question. I think you're going to want to have a say in that. Then I will move on. Thank you, Your Honor. I will rest on my briefs. With regard to the due process argument in this case, I think that it's important to look at what this court actually did. In this case, the court sent out an order to respond. The court specifically invited the parties to not only address the issues the defendant was trying to address. In response to that, the defendant simply made the statement that they wanted a plenary sentencing so that they could address guideline objections. Specifically, he said in the defendant's brief, Mr. Boulding would like the opportunity to address all the concerns that he had his original sentencing and renew his objections to the sentencing guidelines, which at the time of his original sentencing would have had no effect on the outcome of his sentence. No indication what any of the actual arguments or objections to those guidelines were. The objections would be found in the sentencing transcript. Objections that the defendant did not consider and did in fact say how he would rule upon each and every one of the three objections, which were to drug quantity, role, and possession of a firearm. In this case, in this court, I'm sorry, in Lakento, Smith stated that to be fair, it is possible that no one raised mitigation arguments at initial sentencing because all parties were aware that there was a mandatory life sentence. But because Smith failed to raise these arguments in his first step back motion, he simply requested the court to provide an updated sentencing, a pre-sentence report, or hold a hearing. That was not good enough. And the government makes the same argument here. The defendant raised arguments in front of the district court, which the district court took the time to address. Now we come back and the defendant's given an opportunity to raise any issue it wanted, doesn't actually address any of the guideline arguments, but simply makes out this general, we want to be able to have a plenary sentencing and re-impose all of our objections. But the district court, we know under Alexander, they don't get a plenary re-sentencing, right? Under, they don't. Under Alexander, they don't. And the court, what do they get? The question is, what do they get? What, what they get? Yeah, but what does someone get? What does a first step act claimant get? What this district court did is set forth on the docket number 295, the court's opinion, and the court spent a great deal of time explaining exactly how the process would work in his courtroom and what he would review. And then at the end on page 1784, set down that after its review of the record, including defendant Boulding's post-sentencing behavior, the court elects to exercise its discretion to reduce Boulding's sentence. It also, he also talks that he reviewed the complete record as well as the 3553 factors. He also considered post-sentencing conduct. I think if you look on page 1780, where the court says, the court describes the process below and lists out the entire process that the court is going to undertake to review this, there's nothing that the court missed. And I think the point that the government is coming back to, the court in its order to respond specifically told defendant Boulding that the court would decide whether or not there would be a hearing. Not that there would be a hearing. So asking to have a hearing and saying, we'll make, we'll tell you what we're going to bring up at the hearing then, is not what the court said. The court ordered them to respond and raise any issues they wanted. They've just, in a very perfunctory manner said. So your position, Counselor, would be if they had had sufficient information and client contact and had filed a motion that articulated all of the new claims, then that would be part of the process that the court would have to look through and resolve. Well, I believe that the, I believe that the court did resolve these issues, but what I'm saying, or I think I would not say it the way you're saying it, but I will say it similarly, but kind of in reverse. I don't think that the court is precluded from reviewing issues that the defendant raises just because they're not having a plenary, plenaries or sentencing. But in this case, but in this case, basically the issues were raised, but they failed to make any specific argument as to any guideline issue. And a party's failure to raise an issue before the district court generally operates to waive that issue. And issues raised only in a perfunctory manner are also waived. There is nothing more perfunctory than the manner in which these issues were raised. Even though the district court told them, raise any issue you want. All they said was, we want a plenary resentencing, and we'll then want to contest and raise all of the objections we raised before. That's it. You don't dispute though that the law as it is out there now, particularly in light of Smith and Foreman, would say that such a party has a right to an accurate calculation of his guidelines as if he were sentenced when the Fair Sentencing Act had been in effect. I agree, and defendant Felding has still to this day, even on appeal, a year later, not told anybody why his guidelines are inaccurate. In order to prevail, there has to be some error. Boulding has put forth no error to date in any detail. It is only that I want to have a plenary resentencing and readdress all of my objections that I raised before. What about the 35-53 factors? The court addressed the 35-53 I'm going to keep referencing back to page 1780 of the docket because the court sets out in detail that the procedure he is using to determine this, and then if you go to 784, he actually applies it to Boulding in his conclusions. He talks about all the things, but one of the things he says over and over, the guideline reign is not a constraint in any event in ruling on a First Step Act motion. What that means is, even if the defendant believes that the guidelines are incorrect or that they're computed correctly, let's say, but they're, say, overly harsh or whatever reason the defendant thinks, these are issues the defendant can raise. That doesn't mean a judge is going to agree with the defendant. But the judge would need to rule in order to provide the process. If that were raised, the judge would need to rule on it, right? Well, it would have to be addressed. Now, I'm going to tell you that the court sometimes cannot rule on something but show its awareness of something. We had that in a case where a defendant argues they didn't get the, the judge didn't know that he could lower the supervised release, and the court said no. The court is well aware that it can do that. I think Judge Yonker, in this opinion, really set forth that he is well aware that the First Step Act gives him a great deal of discretion, and that even though as part of the sentencing process in terms of determining whether or not to reduce the sentence, yes, he has to look back at the old guidelines. Yes, he calculates the new guidelines, but those guidelines are not binding on him. And that's why I keep coming back to, there is no basis to remand this when the judge already knew what the defendant's argument was regarding these guidelines. The judge had already made... on the issue without actually coming to a conclusion or a ruling. At the time of the sentencing, this judge was the judge that had heard this trial and had also sentenced other co-defendants, in this case, Mr. Richardson. He, this judge, knew this record and made a record. I understand my time is almost up. I have a moment to summarize. Well, the government's belief is that the defendant did get due process, that Judge Yonker was well aware of the defendant's objection and also was well aware of the trial transcript. And he states that in his opinion. So there is no due process violation here. In addition to that, the government is going to continue to assert that it should be a quantity-driven analysis to make the threshold eligibility position. Thank you. Thank you, Your Honor. I just wanted to, I think, answer some of the court's questions to opposing counsel here and say that I do believe that post-sentencing conduct, because of various authority that's out there that I've read, should be considered as part of the plethora of things that should be considered. I also believe that the 3553A factor should be considered by the court. And I do think that an accurate calculation of the guidelines, as they would have been at the time of the Fair Sentencing Act, is a necessary starting point because of Gall and its progeny. I think that a defendant is entitled to have his sentencing be based on accurately and properly scored guidelines. I just want to come back to the factual issues and say that actually, at the conclusion of our brief to the court, we did specifically say he's not waiving his presence at every sentencing hearing and request that he be transferred to the district with enough time that he has the opportunity to meet in person with his attorney before filing any sentencing memorandum or objections to the sentencing guidelines. And I understand that at the point of the Fair Sentencing Act, it's arguable that Mr. Boulding may or may not have a right to counsel, but I don't know how I can present Mr. Boulding's arguments without having adequate time to discuss them with him. And as I said, this was an extensive record with extensive factual information that's actually not in the pre-sentencing report and all these other things. All the things that a defendant at a regular sentencing hearing would raise and have at his fingertips, I did not have. And so, I understand if we can't bring every defendant back to the jurisdiction, but reasonably, I believe that I was requesting that the court, even if they take time and the ability to discuss these things. And truthfully, I needed to understand what our process was before I could understand how to make the appropriate arguments. So, maybe that's not true from now on. Maybe from now on, everybody should already know, here's the process you're going to follow, so you better get every single thing written down. And if you need more time, ask for more time. But that is not the world that we were living in when this document was filed. Like I said, this was the first, I think in Judge Yonker's opinion, there was maybe one other district court cited in his First Step Act decision that had made a decision before that maybe two, but it was nothing like what we have available now. So, please don't hold my inability to predict what was going to happen against Mr. Boulding. Like, we live in fear as defense attorneys of not doing enough or not doing the right things. I did everything that I could in the situation that we were in to tell the court, this is an important issue for Mr. Boulding. He doesn't want to waive it. We're asking for a plenary resentencing. I hoped and expected that even if there wasn't a plenary resentencing, we would be given the opportunity to raise these objections. The court simply apparently decided that the objections weren't relevant to his decision, which that's his decision. I'm asking the court to say, no, those objections were relevant to your decision and you should have given them opportunity because they asked for it to address them. Any further questions? No. Okay. We really appreciate your argument and your briefing work. This is a moving target. Since it began, a number of the circuit courts have weighed in on that, that should aid all of the circuits together to come to a reasonable way of figuring out what the process ought to be. And we thank you for your assistance in getting there. Thank you. I think that's the last that is the last oral argument that we have for our docket today. So you may remove the attorneys from this room and place us back in the roping room, please. And you may adjourn court. Thank you. Thank you. Our court is now adjourned.